[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Following a jury verdict for the plaintiff Kathleen Matthiessen returned on May 25, 2001, the defendants filed several motions and requested a collateral source reduction hearing. These matters were heard on June 26, 2001, and counsel filed additional submissions on July 2, 2001.
In open court on June 26, 2001 the court indicated it would deny the defendants' motions for a mistrial (155.00) and for remittitur (153.00); However, decision was reserved so that decisions could be made on all motions simultaneously. Decision was also reserved on the defendants' motions for judgment notwithstanding the verdict (157.00) and to set aside the verdict (156.00) as well as the collateral source motion (154.00) in order to allow the court time to read and consider the plethora of cases cited during oral argument and to allow additional written arguments.
While the several post-trial motions of the defendant overlapped to some extent in that the same issues were raised in more than one motion, the court reserved decision to consider particularly the claims that it CT Page 9018 (1) incorrectly disallowed the defendants' special defense of comparative negligence to go to the jury, and (2) incorrectly allowed the jury to consider and assess punitive damages against Nicholas Vanech who was the owner, but not the operator, of the vehicle involved in the collision giving rise to Matthiessen's claims.
A. Comparative negligence. The court did not instruct the jury on the defendants' special defenses of comparative negligence because the evidence at trial was insufficient to support a finding that Matthiessen was negligent. The defendants have pointed to Henrigues v. Magnavice,59 Conn. App. 333 (2000) and Eisenbach v. Downey, 45 Conn. App. 165
(1997) for the proposition that the jury should be instructed on each issue for which there is a foundation in the evidence, even if weak or incredible. There was no foundation, weak, incredible or otherwise, in the evidence for a finding of negligence by the plaintiff. The only evidence pointed out by the defendants is Matthiessen's testimony that she saw dust and/or debris in the air a second or two before the collision. Even the able and adept counsel for the defendants could not establish a reason why this was evidence of Matthiessen's negligence.
B. Punitive Damages against Nicholas Vanech. Defendants contend that the court improperly allowed the jury to assess punitive damages against Nicholas Vanech, the owner of the vehicle driven by his daughter Don Vanech which collided with the Matthiessen car. They point out, correctly, that there was no evidence that Nicholas Vanech either authorized or ratified his daughter's, actions or was aware of any prior history of her being reckless in the operation of a car.
While the court may have considerable sympathy with the defendant's argument, it believes the law is to the contrary. Nicholas Vanech was named a defendant because it was alleged Dori Vanech was operating as his agent. Nicholas Vanech admitted this agency relationship. At common law a person liable vicariously was not subject to punitive or exemplary damages. Maisenbacker v. Society Concordia, 71 Conn. 369 (1899). However, General Statutes § 52-183 applies the agency presumption to an owner in any case seeking damages for the "negligent or reckless operation" of a vehicle. Without rehashing the several learned and well reasoned Superior Court decisions on the subject, and taking into account the statutory language quoted above, the court holds that punitive damages and exemplary damages may be assessed pursuant to General Statutes § 14-295, and under the common law, against one held vicariously liable as a principal. The court adopts the reasoning of Judges Blue and Rubinow respectively in Santillo v. Arredono, Superior Court, judicial district of New Haven at New Haven, DN 442323 (March 21, 2000) and Landers v. Schwartz, Superior Court, judicial district of Hartford-New Britain at Hartford, CV 00 0595398 (Sept. 19, 2000). CT Page 9019
C. Collateral Source Reduction. The parties have agreed in their July 2 submissions on the following: The plaintiff had medical bills of $49,069.45 and that $37,465.34, representing insurance premiums and patient co-payments, can be deemed collateral source reductions pursuant to General Statutes § 52-225a(c). The issue is whether the difference between these two amounts, $11,604.11, or some portion of it, should be deducted from the jury verdict amount.
The plaintiff contends that deduction of the full $11,604.00 would amount to a "double deduction" against her which violates the intention of § 52-225a. The gist of this argument is that the plaintiff submitted medical bills into evidence amounting to $49,069.45 which were claimed as past economic losses. Some of these bills were hotly contested by the defendant as representing treatment for injuries not causally related to the subject motor vehicle accident. Furthermore, the plaintiff claimed future economic losses of over $246,000. The jury returned a verdict awarding the plaintiff $175,000 for economic loss, undifferentiated between past and future.[1]
The plaintiff argues that since the jury awarded far less than was claimed for economic loss it follows that the jury must have reduced her claim, based on the medical bills, for past economic loss substantially below the $49,069.45 submitted into evidence. The argument concludes that the defendants should not be entitled to both a reduction in the claimed medical expenses and a further reduction which is based on the full amount of claimed medical expenses. This is an ingenious and respectable argument.
The difficulty the court faces in accepting the plaintiff's position is the large element of speculation which forms its thesis. No one knows exactly, or inexactly, what amount of the plaintiff's medical expenses of $49,069.45 went into the jury verdict of $175,000 for economic damages. While it is clear that the jury did not accept all of plaintiff's economic damage claims, it is not known what elements were discounted or disregarded. For instance, the jury might have accepted the full past medical expenses and discounted portions of the future claimed economic loss; other scenarios are possible.
Plaintiffs cites to Arkenbout v. Ryan, Superior Court, judicial district of New Haven at New Haven CV 92-0331859 (May 3, 1996, Hodgson J.) in support of their contention, although conceding the case is not squarely on point. In Arkenbout the jury heard evidence about the amount of disability payments received by the plaintiff and the "plaintiff never claimed that the disability should not be deducted by the jury . . ." Id. That situation is not what occurred in this case where the jury was CT Page 9020 scrupulously kept ignorant of any insurance involvement, and plaintiff never allowed the jury to consider any deductions for insurance.
The pertinent statute, General Statues § 52-225a, on its face, does not provide much purchase for plaintiff's argument. It states that "the court shall reduce" the economic loss portion of a jury verdict by the amount of collateral source payments received by the plaintiff less amounts paid to secure the collateral benefits. In the face of the language, and absent any controlling or persuasive judicial gloss on this provision, the plaintiffs contention is rejected.
 Conclusion
After full review of all the parties' contentions, in addition to those discussed above, the defendants' motions to set aside the verdict and for judgment n.o.v. are denied. As indicated, the motion for mistrial and motion for remittitur are denied. After a collateral source hearing, the jury's verdict award for economic damages is reduced by $11,604.11 and judgment may enter for $363,395.89
ADAMS, J.